

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| EDMUND B. GREGORIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:05-0822-HFF |
| | § | |
| EUGENE GOINS and STEVE LOFTIS, | § | |
| Sheriff of Greenville County, South Carolina, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This is a civil rights action.  In addition to the federal claim, Plaintiff alleges several state causes of action.  He seeks both actual and punitive damages.  The Court has jurisdiction over the matter pursuant to Sections 1331 and 1367 of Title 28 of the United States Code.

Pending before the Court is Defendants' Motion for Summary Judgment as to all causes of action.  Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court that Defendants' Motion for Summary Judgment shall be granted.

## II.     STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts.

Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

### III.    FACTUAL AND PROCEDURAL HISTORY

The Court has generally adopted the relevant facts as set forth in Plaintiff's Memorandum of Opposition to Defendants' Motion for Summary Judgment. The citations to the record, however, have been omitted.

On the evening of Thursday and early morning of Friday, June 24-25, 2004, Defendant Goins, a Greenville County Deputy Sheriff, observed Plaintiff operating his 2001 Cadillac automobile on Halton Road in Greenville County, in an opposite direction of travel from Defendant Goins and determined Plaintiff's speed by radar to be 37 mph in a 40 miles per hour zone.

Defendant Goins turned around and began to follow Plaintiff for about two miles. Although Plaintiff failed to give a proper lane change signal at some point during this time, Defendant Goins did not subsequently cite Plaintiff for failure to signal the lane change.

At the intersection of Patewood and Pelham Roads, continuing across Pelham, Patewood becomes Hudson Road, a much narrower road where the speed limit drops to 35 mph, and the road is initially two lanes with the right lane terminating after about 75 to 100 yards. After the roadway narrows to one lane from two lanes, and at the point that Defendant Goins had Plaintiff pull over, the roadway suddenly narrows from about 11 feet 5 inches down to about 9 feet 9 inches, between the side white line and the center yellow line.

Defendant Goins stated that when Plaintiff was traveling on Hudson Road, he hit the white line and then hit the yellow line several times. Defendant Goins also declared that he believed that Plaintiff was so far over toward the center line that he almost hit another car coming down Hudson Road in the opposite direction, and he signaled Plaintiff to pull over by use of his blue lights.

Upon being signaled by Defendant Goins, Plaintiff pulled his automobile to the shoulder of Hudson Road. Defendant Goins exited his vehicle and approached Plaintiff who had exited his automobile. After speaking to Plaintiff, Defendant Goins directed Plaintiff to get back into his vehicle and pull it across the road into a driveway on the opposite side. Plaintiff followed these instructions.

Defendant Goins then administered field sobriety tests to Plaintiff. Having failed the tests, Defendant Goins placed Plaintiff under arrest and transported him to the Greenville Law Enforcement Center.

When the parties arrived at the Detention Center, Plaintiff was fingerprinted and taken to the Breathalyzer Room, where Plaintiff declined the Breathalyzer on the advice of counsel. He also argues that he could not read the Breathalyzer documents without his glasses. Plaintiff was then booked and released on bond later in the morning.

Plaintiff's drivers license was suspended for 90 days for refusal of the Breathalyzer, and he requested an Administrative Hearing on the suspension. Although Plaintiff retained legal counsel and appeared at the Administrative Hearing in Greenville County, Defendant Goins nor any other representative of Defendant Loftis' Department appeared at the hearing.[1] Plaintiff's license was restored due to Defendants' default.

At a subsequent trial by jury in the Magistrate's Court for Greenville County, after hearing the testimony by witnesses, including Defendant Goins, and viewing videotape of the pursuit, arrest, and Breathalyzer proceedings, the jury found Plaintiff not guilty of the charge of driving under the influence. Plaintiff's motion for a directed verdict that Plaintiff made at the end of the prosecution's case, however, was denied.

**IV.     CONTENTIONS OF THE PARTIES**

Defendants contend that Defendant Goins had reasonable suspicion to stop Plaintiff's car. They also maintain that Defendant Goins had probable cause to arrest Plaintiff for suspicion of Driving Under the Influence (DUI). Defendants argue that Defendant Goins is entitled to qualified immunity from suit, as well.

---

[1] Defendant Loftis is the Sheriff of Greenville County.

As to Defendant Loftis, Defendants assert that he cannot be held liable absent any constitutional violation by Defendant Goins. Moreover, Defendants asseverate that, because Defendant Loftis is a state official, he cannot be held liable under Section 1983 in his official capacity, he cannot he be held vicariously liable for the alleged unconstitutional actions of his deputy, nor can he be held liable for a failure to train. Finally, Defendants claim that they are immune from tort liability under the South Carolina Tort Claims Act.

Plaintiff disputes each of Defendants' averments.

## V.     DISCUSSION

### *A.     Reasonable Suspicion*

Defendants contend that Defendant Goins had reasonable suspicion to stop Plaintiff's car. The Court agrees.

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer may conduct a brief investigatory stop when the officer has a reasonable suspicion that criminal activity may be afoot. A *Terry* stop must be based on "at least a minimal level of objective justification," but the standard for reasonable suspicion is less demanding than for probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)

In evaluating a *Terry* stop's validity, the Court is mandated to consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989) Hence, factors which by themselves suggest nothing more than innocent conduct may amount to reasonable suspicion when taken together. *United States v. Arvizu*, 534 U.S. 266, 274-75 (2002). Further, the Court's determination of reasonable suspicion must give due weight to common sense judgments reached by officers in light of their experience and training. *Wardlow, 528 U.S.* at 125. Although the Court requires more

6

than a mere "hunch" to justify a stop, it also credits the "practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993).

In the case at bar, Defendant Goins observed Plaintiff driving three miles below the posted speed limit. While certainly not illegal to drive at such a speed, the record in this case supports Defendants' contention that Defendant Goins had been trained in such a manner as to reasonably believe that the driving by someone below the posted speed limit may be an indication of one attempting to avoid detection. Moreover, according to Defendant Goins' testimony in the underlying criminal trial of this matter, his experience was such that people on the road on which he observed Plaintiff to be driving tended to drive either over the speed limit or above it. Thus, when Defendant Goins observed Plaintiff driving below the speed limit, he found it suspicious.

Moreover, Plaintiff's failure to provide a proper signal, as well as his crossing the double yellow line, albeit minor traffic violations, provided Officer Goins with reasonable suspicion to conduct the traffic stop that is the basis of this suit. A jury could not reasonably find otherwise.

> When an officer observes a traffic offense-however minor-he has probable cause to stop the driver of the vehicle.... [T]his otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity.... [T]hat stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.
>
> . . . .
>
> [W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment. Such a limited detention does not become "unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity."

7

*U.S. v. Hanson El*, 5 F.3d 726, 730 (4th Cir. 1993) (citations omitted).  Therefore, the Court will enter judgment accordingly.

      B.    *Probable Cause*

Defendants also maintain that Defendant Goins had probable cause to arrest Plaintiff for suspicion of Driving Under the Influence (DUI).  The Court is persuaded by Defendants' argument.

The legal inquiry commences with the Fourth Amendment, which provides that the people are "to be secure in their persons . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  This limitation was made applicable to the States through the Fourteenth Amendment.  *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1961) (overruled on other grounds).  Under the Fourth Amendment, an officer may make a warrantless arrest of an individual in a public place if supported by probable cause.  *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)

In assessing the existence of probable cause, the Court looks to the totality of the circumstances known to the officer at the time of the arrest.  *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995).  Probable cause exists when the facts and circumstances known to the officer "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense."  *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir. 1988).  Probable cause requires only enough evidence to warrant a man of reasonable caution in the belief that an offense has been or is being committed.  *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (internal quotation marks omitted).  Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required.  *Wong Sun v. United States*, 371 U.S. 471, 479 (1963).

In the case at bar, Plaintiff admitted that the smell of alcohol was on his person, whether his clothes or his breath. Further, and as already was noted, Defendant Goins observed Plaintiff's failure to provide a proper signal, as well as his crossing the double yellow line. Moreover, Plaintiff failed the field sobriety tests conducted by Defendant Goins.

In sum, the totality of the circumstances as recited above are sufficient to convince the Court that Defendant Goins had probable cause to arrest Plaintiff on suspicion of DUI. A jury could not reasonably disagree. Therefore, the Court will enter judgement for Defendants on this issue.

    *C.*    *Qualified Immunity*

Defendants argue that Defendant Goins is entitled to qualified immunity from suit as well. The Court is convinced.

As a general rule, government officials acting reasonably within the scope of their authority are immune from both defending themselves in a legal action and possible subsequent liability. Reasonable conduct is defined as conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test "generally turns on the 'objective legal reasonableness' of the actions," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 819), and ignores considerations of the official's subjective intent. Stated differently, the Court looks to the law itself. The knowledge or intent of the particular official is irrelevant.

In ascertaining whether an official violated clearly established law, the Court looks to the law at the time the alleged offense was committed. *Harlow*, 457 U.S. at 818. The law must be established with some particularity. *Anderson*, 483 U.S. at 640. That is, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

9

that right. That is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law, the unlawfulness of the action must be apparent. *Id*. (citations omitted).

The Supreme Court has formulated its test for qualified immunity by balancing competing interests "'in vindication of citizens' constitutional rights and in public officials' effective performance of their duties [.]'" *Anderson*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

> In the interests of accomplishing public goals and encouraging public service, government officials should not be under the burden of defending themselves against every claim raised by an aggrieved individual, but neither should they be given free rein and the power of a governing position to infract the rights of citizens. The resulting objective test satisfies both interests by holding public officials responsible only for conduct that a reasonable official should readily be able to determine unlawful.

*Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992).

In considering individual Defendants' qualified immunity defense, the Court looks to substantive law concerning the stop and arrest as established at the time of the alleged injury to Plaintiff. In so doing, the Court cannot find that the applicable substantive law was so clearly established at the time of the complained incident as to give notice to a reasonable police officer that an arrest in circumstances such as presented herein was unlawful. Therefore, the Court will grant summary judgment to Defendants on this issue.

### D.     *Defendant Loftis' Liability for Defendant Goins*

As to Defendant Loftis, Defendants assert that he cannot be held liable absent any constitutional violation by Defendant Goins. The Court agrees. Therefore, in light of the Court's

finding above that Plaintiff has failed to establish his alleged constitutional violations by Defendant Goins, it necessarily follows that his supervisor, Defendant Loftis, cannot be held to be liable for those alleged violations either.

### E.   Defendant Loftis' Liability under § 1983

Defendants asseverate that, because Defendant Loftis is a state official, he cannot be held liable under § 1983 in his official capacity.

Section 1983 provides for a civil action to recover damages for deprivation of a constitutionally protected right. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the United States Supreme Court held that neither the state, nor a state official acting in an official capacity, are "persons" within § 1983. Sheriffs are state officials and, therefore, not liable in their official capacity under § 1983. *Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992). Accordingly, Defendant Loftis cannot be held liable for money damages under § 1983.[2]

### F.   Vicarious Liability

Defendants argue that Defendant Loftis cannot be held vicariously liable for the alleged unconstitutional actions of Defendant Goins. The Court agrees, but for different reasons than those posited by Defendants.

"Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Jennings v. University of North Carolina, at Chapel Hill* 444 F.3d 255, 281 (4th Cir. 2006) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

---

[2]The *Cone* court also held that a deputy is a state official and, thus, is not liable in his official capacity for monetary damages under 42 U.S.C. § 1983. *Cone*, 308 S.C. at 112, 417 S.E.2d 523 at 525.

To establish supervisory liability under § 1983, Plaintiff is required to demonstrate the following: (1) Defendant Loftis had actual or constructive knowledge that Defendant Goins was engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) Defendant Loftis' failure to respond amounted to deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was a causal link between Defendant Loftis' inaction and the constitutional injury. *See Jennings*, 444 F.3d at 281.

If no "constitutional injury" has occurred, however, then Plaintiff is unable to satisfy element three and the claim fails. Because the Court has found that Goins did not violate § 1983, Defendant Loftis cannot be held liable. Thus, the Court will enter judgment for Defendants on this claim.

*G.     Failure to Train*

According to Defendants, Defendant Loftis cannot be held liable for Plaintiff's failure to train claim. The Court is persuaded.

An inadequate training claim can constitute the basis for § 1983 liability in limited circumstances. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). Inadequate police training may be actionable pursuant to § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378 (1989) (quotation marks omitted). Moreover, for liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391. Such a deficiency must be shown by a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*

Plaintiff's failure to establish that a constitutional injury occurred is fatal to Plaintiff's failure to train claim. Thus, the Court will grant Defendants' Motion for Summary Judgment as to this cause of action.

### H. South Carolina Tort Claims Act

Defendants claim that they are immune from tort liability under the South Carolina Tort Claims Act. The Court agrees.

Section 15-78-70 of the South Carolina Code provides that "[a]n employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." S.C. Code Ann. 15-78-70(a). Subsection (b) provides that, "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. 15-78-70(b).

The Court is unable to find any evidence on which a jury could reasonably find that Defendants were either acting outside the scope of their official duties when dealing with Plaintiff or that their actions constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. Similarly, there is no evidence of gross negligence on which a reasonable jury could find for Plaintiff. *See* S.C. Code Ann. 15-78-60. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on this issue.

### I. Plaintiff's Other Claims

Based on the discussion above, none of Plaintiff's other claims can survive.

**VI.     CONCLUSION**

In light of the foregoing discussion and analysis, the Court concludes that Defendants are entitled to judgment as a matter of law as to all of Plaintiff's claims.  Hence, Defendants' Motion for Summary Judgment must be **GRANTED.**

**IT IS SO ORDERED**.

Signed this 29th day of March, 2007, in Spartanburg, South Carolina.

                                                    s/ Henry F. Floyd
                                                  HENRY F. FLOYD
                                                  UNITED STATES DISTRICT JUDGE